United States District Court
Southern District of Texas
**ENTERED**
April 18, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

MARK PAUL KIRKPATRICK,     §
§
     Plaintiff,       §
§
§
VS.                       §      CIVIL ACTION NO. 3:16–CV–00337
§
CAROLYN W COLVIN      §
§
     Defendant.      §

## MEMORANDUM AND RECOMMENDATION

Plaintiff Mark Paul Kirkpatrick ("Kirkpatrick") seeks judicial review of an administrative decision denying him disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et. seq.* (Dkt. Nos. 1, 12).

All dispositive pretrial motions in this case were referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(b). (Dkt. 16). Pending before the Court is Plaintiff's Motion for Summary Judgment. (Dkt. 12). Having considered the motion, the response, and applicable law, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 12) be GRANTED, the decision of the Commissioner be REVERSED, and the case be REMANDED for reconsideration in accordance with this opinion and applicable law.

## I. BACKGROUND

Kirkpatrick filed a claim for disability insurance benefits, alleging disability beginning July 16, 2013. Kirkpatrick is over 40 years old, with a high school education,

1

and last worked as a water control supervisor.  His claim was denied on initial review and reconsideration.    An  administrative  law  judge  ("ALJ")  for  the  Social  Security Administration (the "Agency") held a hearing and found Kirkpatrick not disabled.

The ALJ found at step 2 of the required sequential analysis (20 C.F.R. § 404.1520) that Kirkpatrick had the following severe impairments: degenerative disc disease of the lumbar spine and diabetic peripheral neuropathy.  At step 3, the ALJ found that none of these impairments met or medically equaled any of the Agency's listed impairments.

The ALJ concluded that Kirkpatrick had a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following exertional limitations: cannot climb ropes, ladders or scaffolds; and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.

Based on this RFC, the ALJ concluded at step 4 that Kirkpatrick "is capable of performing past relevant work as a water control supervisor," and such work "does not require  the  performance  of  work-related  activities  precluded  by  claimant's  residual functional capacity."    (Dkt. 10-4 at 43).    Accordingly,  the  ALJ  determined  that Kirkpatrick did not suffer from a disability under the Act and, therefore, he was not entitled to benefits.

The  Social  Security  Administration's  Appeals  Council  denied  Kirkpatrick's request for review.  Kirkpatrick then filed this action seeking judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Kirkpatrick asserts the ALJ's decision is not supported by substantial evidence because the ALJ failed to "properly consider and evaluate medical opinion evidence"

provided by a treating podiatrist, an examining orthopedic surgeon, and a physician assistant when determining his RFC.[1]  (Dkt. 12 at 1).

## II. APPLICABLE LAW

Section 405(g) of the Act governs the standard of review in disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).   The decision by the Commissioner of the Social Security Administration ("Commissioner") to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standard, and (2) the Commissioner's factual findings are supported by substantial evidence.  *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000).  "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance."  *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987) (citation omitted).   "Judicial review is to be deferential without being so obsequious as to be meaningless."  *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

A claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."  *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992).   The administrative law judge must follow a five-step sequential analysis to determine whether a plaintiff is, in fact, disabled:

---

[1]  Although Kirkpatrick frames his sole issue as one turning on whether the ALJ's decision is supported by substantial evidence, his arguments actually challenge whether the ALJ failed to apply proper legal standards.

1. Is the claimant currently engaged in substantial gainful activity, i.e., working?  If the answer is yes, the inquiry ends and the claimant is not disabled.

2. Does the claimant have a severe impairment?  If the answer is yes, the inquiry proceeds to question 3.

3. Does the severe impairment equal one of the listings in the regulation known as Appendix 1?  If so, the claimant is disabled.  If not, then the inquiry proceeds to question 4.

4. Can claimant still perform his past relevant work?  If so, the claimant is not disabled.  If not, then the agency must assess the claimant's residual functional capacity.

5. Considering the claimant's residual functional capacity, age, education, and work experience, is there other work claimant can do?  If so, claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718.  Once the Commissioner shows that other jobs are available, the burden shifts back to the claimant to show he is unable to perform the alternative work.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's decision must stand or fall with the reasons stated in the ALJ's final decision.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).  Post hoc rationalizations for an agency decision are not to be considered by a reviewing court. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).  "The reviewing court may not reweigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision.  Conflicts in the evidence are for the Commissioner, not the courts, to resolve." *Pennington v. Comm'r of Soc. Sec. Admin.*, No. 3:16-CV-230, 2017 WL 4351756, at *1

(S.D. Tex. Sept. 29, 2017) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (Hanks, J.)).

### III. DISCUSSION

This appeal raises one issue: whether the ALJ failed to properly weigh the opinions of treating podiatrist Dr. Sean Reyhani ("Dr. Reyhani"), examining orthopedic surgeon Dr. Frank L. Barnes ("Dr. Barnes"), and Physician Assistant Bobbie Baggett ("Baggett") when determining Kirkpatrick's RFC. The Court address each medical opinion in turn and separately considers the issue of harmless error.

### A.   DR. SEAN REYHANI, KIRKPATRICK'S TREATING PODIATRIST[2]

Kirkpatrick contends that, when determining his RFC, "the ALJ failed to properly evaluate the opinion of Dr. Reyhani." (Dkt. 12 at 13). Specifically, Kirkpatrick argues: "there is no other evidence from a podiatrist indicating that [he] has the ability to perform the prolonged standing and walking which would be required of light work"; "the ALJ has failed to reference what, if any, 'substantial evidence in the medical record' contradicts the opinion of [Dr. Reyhani]"; and "there is nothing in the ALJ's decision to suggest that she applied any of the [*Newton*] factors to evaluate any medical opinion in the record." (*Id.*).

---

[2] Dr. Reyhani appears to be a treating physician, and the ALJ does not state otherwise. Thus, the Court regards Dr. Reyhani's opinion as that of a treating physician for purposes of its discussion. *See Boles v. Colvin*, No. 1:15-CV-0049-BL, 2016 WL 4257441, at *5 (N.D. Tex. May 27, 2016), *report and recommendation adopted*, No. 1:15-CV-049-C, 2016 WL 4257467 (N.D. Tex. Aug. 11, 2016) ("[w]hen a physician appears to be a treating source and the ALJ does not specifically state that the source is considered as a non-treating source, the better practice is to consider the physician as a treating source").

**Requirements for Giving Weight to Treating Physician:** The treating physician rule provides that the opinion of a claimant's treating physician is entitled to great weight. *Newton*, 209 F.3d at 455–56; *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Indeed, a treating physician's opinion regarding the severity and nature of a plaintiff's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175–76 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)). But the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" so long as good cause is shown. *Newton*, 209 F.3d at 455. As stated clearly by the Fifth Circuit:

> Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

*Id*. at 455–56 (internal citations and quotation marks omitted).

**Factors to be Considered Before Declining to Give Treating Physician's Opinion Controlling Weight:** Social Security Administration regulations provide that the ALJ "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *See* 20 C.F.R. §

404.1527(c)(2) (effective August 24, 2012 to March 26, 2017).  The regulations require the ALJ to consider six specific factors to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight."  (*Id*.).  Specifically, the ALJ must consider: (1) examining relationship; (2) treatment relationship; (3) supportability of the medical opinion; (4) consistency; (5) specialization of the physician; and (6) other factors. The ALJ must consider all six of these factors if "controlling weight" is not given to a treating physician's medical opinions.[3]  (*Id*.).  ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion"); *Newton*, 209 F.3d at 456 (stating the Fifth Circuit requires consideration of each of the 20 C.F.R. § 404.1527(c)(2) factors).

In *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456.  But, in subsequent decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009).  Therefore, where there is competing first-hand medical evidence (i.e., competing opinions of treating or examining physicians), and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another, the ALJ need not necessarily set forth an analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id*. at 466–

---

[3] These factors are sometime referred to as the *Newton* factors.

67.   "Stated differently, the detailed analysis under Newton is not necessary when the ALJ has weighed the treating physician's opinion against opinions of other treating or examining physicians who have specific medical bases for a contrary opinion." *Nordin v. Comm'r, SSA*, No. 4:16-CV-00830-CAN, 2018 WL 1536897, at *4 (E.D. Tex. Mar. 28, 2018).

   **Weight Given Dr. Reyhani:** Here, as recognized by the ALJ, Dr. Reyhani treated Kirkpatrick from July 7, 2015, through October 5, 2015, and his diagnoses included "diabetes with peripheral neuropathy and left hallux chronic ulcer with clinical findings including an inability to walk and difficulty performing daily activities." (Dkt. 10-4 at 41).   Based on these clinical findings, as explained by the ALJ, Dr. Reyhani made the following findings regarding Kirkpatrick's physical limitations:

> In estimating the range of his level of pain, the doctor noted that his pain level was none to trace.   It was not necessary for the claimant to sit continuously in a work setting.   It was necessary that he not stand/walk continuously in a work setting.   The doctor opined that the claimant could occasionally lift/carry up to 10 pounds.   It was not necessary to take unscheduled breaks to rest at unpredictable intervals during an 8-hour workday ….

(*Id.*).

   Notwithstanding Dr. Reyhani's clear status as a treating physician, the ALJ assigned "very little weight" to the physical limitations assessed by Dr. Reyhani in the Multiple Impairment Questionnaire he completed on October 12, 2015.   In assigning Dr. Reyhani's opinion very little weight, the ALJ offered a single sentence, containing two bare bones explanations: Dr. Reyhani "only saw the claimant a few times" and his opinion "is not supported by the other substantial evidence in the medical record."   (Dkt.

8

10-4 at 43).   Notably, in assigning very little weight, the ALJ did not identify, cite, or

otherwise demonstrate her reliance on any specific controverting or competing medical

opinions, treatment notes, or clinical observations from another treating or examining

physician.[4]   Simply put, the ALJ gave absolutely no insight into what "other substantial

evidence" she had in mind when discounting Dr. Reyhani's opinion and, thus, shirked her

duty to "include at least sufficient detail for the reviewing court to determine whether the

proper legal standards were used to evaluate the evidence."[5]   *Nalls v. Astrue*, No. 3:08-

CV-0534-D, 2008 WL 5136942, at *6 (N.D. Tex. Dec. 8, 2008) (citing *Ripley v. Chater*,

67 F.3d 552, 555 (5th Cir. 1995)).   In sum, because "[t]he Fifth Circuit only allows an

ALJ to bypass the six factor analysis when he or she points to a competing opinion of a

treating or examining physician," the "ALJ was … required to conduct the six-factor

---

[4] Based on this Court's review of the record, only two of the doctors who actually observed and examined Kirkpatrick in a clinical setting offered an opinion regarding his physical limitations: Dr. Reyhani (treating) and Dr. Frank L. Barnes (examining).   Thus, the ALJ could have attempted to rely upon the opinion of Dr. Barnes; however, she assigned Dr. Barnes's opinion no weight, as discussed in Section B.

[5] After assigning Dr. Reyhani's opinion very little weight, the only specific medical opinions discussed by the ALJ were the opinions of two non-examining State Agency physicians.   (Dkt. 10-4 at 43).   The ALJ does not attempt to directly juxtapose or otherwise compare the findings of the non-examining physicians with those of Dr. Reyhani.   Nonetheless, the Court recognizes that Dr. Reyhani's described limitations match up with a sedentary RFC, whereas the State Agency physicians found limitations matching up with a light work RFC.   In this regard, the non-examining State Agency physicians offered medical conclusions that are contradicted or unsupported by the findings made by Dr. Reyhani, the only treating physician.   In the Fifth Circuit, an "ALJ may rely on a non-examining physician's assessments **so long as** the report of the non-examining physician is not the sole medical evidence presented **and as long as the non-examining physician does not draw specific medical conclusions that either contradict or are unsupported by findings made by an examining physician**."   *Hill v. Berryhill*, No. 17-60007, 2018 WL 775290, at *3 (5th Cir. Feb. 7, 2018) (internal quotation marks and citation omitted) (emphasis added).   In other words, even if the ALJ intended to solely rely upon the opinions of the non-examining State Agency physicians as the basis for assigning very little weight to Dr. Reyhani's opinion, she could not do so here.

analysis" before assigning Dr. Reyhani's opinion very little weight.  *Nordin*, 2018 WL 1536897, at *6 (collecting cases) (internal quotation marks, alterations, and citations omitted).  Accordingly, the Court finds that the ALJ erred in weighing and considering the medical opinions of Dr. Reyhani by failing to conduct a detailed six factor analysis. *See Ihde v. Colvin*, 270 F. Supp. 3d 956, 964 (W.D. Tex. 2017) ("Generally, the hearing officer ought discuss all six factors if granting a treating physician's opinion little or no weight.").

## B.   DR. FRANK L. BARNES, KIRKPATRICK'S EXAMINING ORTHOPEDIST

Kirkpatrick next contends that, when determining his RFC, "the ALJ failed to properly evaluate the opinion of the evaluating orthopedic surgeon, Dr. Barnes."  (Dkt. 12 at 12).  Specifically, Kirkpatrick argues that Dr. Barnes's opinion, contrary to the finding of the ALJ, was "based upon clinical observations" and "the fact that Dr. Barnes saw Mr. Kirkpatrick only once, is but one of the factors set forth … under 20 CFR § 404. 1527." (*Id*.).  Kirkpatrick further claims that the ALJ's failure to apply any of the other factors in assessing Dr. Barnes's opinion amounts to reversible legal error.  (*Id*. at 13).

**Requirements for Giving Weight to Examining Physician:** "In addition to the rules surrounding treating physicians, the regulations make clear that opinions from examining physicians must be considered.  20 C.F.R. § 404.1527(c)(1) states that, '[g]enerally ... more weight [is given] to the opinion of a source who has examined you than to the opinion of a source who has not examined you.'" *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017) (citing *Wright v. Colvin*, 789 F.3d 847, 852–53 (8th Cir. 2015) ("[T]he opinions of examining medical professionals are given more weight than

10

nonexamining medical professionals."); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice.")).   "Opinions of acceptable medical sources that are not treating sources [—such as examining physicians—] are not provided with the same 'considerable weight' as treating sources, but such medical opinion evidence is still entitled to weighing and evaluation."  *Ihde*, 270 F. Supp. 3d at 964 (citations omitted). "A hearing officer demonstrates that he properly weighed the evidence where he gives 'specific reasons,' in accordance with the weight factors, for assigning an examining physician's evidence a particular weight."  (*Id.*) (citing *Pradia v. Colvin*, No. 3:15-CV-00036-RFC, 2017 WL 28088, at *5 (W.D. Tex. Jan. 3, 2017)).[6]  There is not, however, a requirement for "detailed analysis."  *Pradia*, 2017 WL 28088, at *5.

**Weight Given Dr. Barnes:**  The ALJ assigned no weight to the physical limitations assessed by Dr. Barnes, Kirkpatrick's examining orthopedist, because "this is the one and only time this doctor has seen the claimant and the limitations appear based on self-reports."  (Dkt 10-4 at 42).

Dr. Barnes is an examining orthopedist.  Orthopedics is the "branch of surgery which is specially concerned with the preservation and restoration of the function of the skeletal system, its articulations, and associated structures."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (29th ed. 2000).  In other words, Dr. Barnes is a physician

---

[6] *But see Ciccotti v. Astrue*, No. SA-09-CV-969-XR, 2010 WL 3022775, at *9 (W.D. Tex. July 28, 2010) ("The [hearing officer i]s not required to conduct a six-factor test to weigh the medical opinions of non-treating doctors because the doctors were not treating doctors.").

especially suited to opine on the limitations that might be suffered by Kirkpatrick as a result of his degenerative disc disease of the lumbar spine.  Dr. Barnes did so in the form of a Disability Impairment Questionnaire, which is accompanied by his examination notes that were made the same day the questionnaire was completed.  In the examination notes, Dr. Barnes indicates that he reviewed Kirkpatrick's medical records covering "the time from 2013–2015" and, before completing the questionnaire, he conducted his own physical examination of Kirkpatrick.  (Dkt. 10-13 at 54–56).  Based on those medical records and his physical examination of Kirkpatrick, as explained by the ALJ, Dr. Barnes determined that:

> [I]n an 8-hour workday, the claimant could perform a job in a seated position for 2 hours, could perform a job standing and/or walking for 2 hours, changing positions from sitting every 20 minutes for 5 minutes each time, and could occasionally lift/carry up to 5 pounds.  In addition, he would need to take unscheduled breaks to rest at unpredictable intervals two times daily for 30 minutes each time during and [sic] 8-hour workday.  On average, he would likely be absent from work as a result of his impairments or treatment two to three times a month ….

(Dkt. 10-4 at 40).

In assigning these limitations no weight, the ALJ inaccurately states that the limitations described by Dr. Barnes "appear based on [Kirkpatrick's] self-reports."  (Dkt. 10-4 at 42).  Dr. Barnes's sole reliance on Kirkpatrick's self-reports, if true, would be a sufficient reason to disregard his medical opinion.  *See, e.g., Greenspan*, 38 F.3d at 237 (explaining even a treating physician's medical opinion, which is ordinarily entitled to controlling weight, may be given "no weight" if it is "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise

12

unsupported by the evidence"). However, Dr. Barnes identified that pre-existing medical records, as well as his own physical examination prompted his opinion as to Kirkpatrick's physical limitations. In this regard, the ALJ's blanket assertion that Dr. Barnes's opinion is based on self-reports is unsupported and controverted by the record.[7] *See e.g., Smith v. Colvin*, No. 1:14CV195-SA-DAS, 2016 WL 762693, at *9 (N.D. Miss. Feb. 25, 2016) ("Just as the court may not accept explanations not offered in the ALJ's opinion, it cannot ignore or disregard statements made by the ALJ in support of the decision.") (quotation marks and citation omitted).

The ALJ's second stated reason for assigning Dr. Barnes's opinion no weight is also problematic. The ALJ identifies the fact that Dr. Barnes only examined Kirkpatrick one time as reason to assign his opinion no weight. The Court is aware of no authority, and the commissioner has not offered any authority, standing for the proposition that an examining physician's opinion may be assigned no weight solely based on the length of the treatment relationship of a claimant. But even if such authority exists, it would be undermined in this case because while assigning no authority to Dr. Barnes's opinion—

---

[7] There may well be an explanation that the ALJ could offer to explain her assertion that only self-reports support Dr. Barnes's opinion. If such an explanation exists, it was incumbent upon the ALJ to clearly express such in her decision because "[r]eviewing courts do not consider rationales supporting an ALJ's decision that are not invoked by the ALJ." *Johnson v. Colvin*, No. 3:16-CV-69-BN, 2017 WL 86139, at *5 (N.D. Tex. Jan. 10, 2017) (quotation marks and citation omitted). *See also Newton*, 209 F.3d at 455 (explaining that the Commissioner's decision must stand or fall with the reasons stated in the ALJ's final decision); *Smith*, 2016 WL 762693, at *9 ("If the ALJ's decision cannot be affirmed based upon the reasoning provided by the ALJ, then it must be reversed. The decision cannot be salvaged by the *post hoc* rationalizations offered by counsel for the defendant. The court will consider and weigh only the explanations provided by the ALJ's decision, and in this case, the ALJ has offered scant support for that decision.").

13

which included an examination of Kirkpatrick—the ALJ assigned "moderate weight" to the medical opinions of two state agency physicians, neither of whom examined Kirkpatrick.  In doing so, the ALJ does not provide any reason or explanation why she failed to follow the general rule under 20 C.F.R. § 404.1527(c)(1), which "states that, '[g]enerally ... more weight [is given] to the opinion of a source who has examined you than to the opinion of a source who has not examined you.'"  *Kneeland*, 850 F.3d at 760 (quoting 20 C.F.R. § 404.1527(c)(1)).

Notably, the Commissioner's arguments in support of the ALJ's decision rely on reasoning that was unexpressed by the ALJ.  Specifically, the Commissioner contends that: (1) Dr. Barnes's opinion "clearly does not reflect the essentially normal examinations in the record"; (2) Dr. Barnes opinion "is also inconsistent with Plaintiff's admitted ability to lift his grandchildren and play with them"; and (3) Dr. Barnes did not take into account Kirkpatrick's admission related to his level of pain.  (Dkt. 15 at 3). Importantly, as detailed above, the ALJ offered none of these reasons as a basis for her decision to give Dr. Barnes's opinion no weight.  Thus, the Court declines the Commissioner's invitation to entertain such post hoc rationalizations.  *See Newton*, 209 F.3d at 455; *Chenery*, 332 U.S. at 196.

In sum, the Court finds that the ALJ applied an improper legal standard in assigning no weight to the opinion of an examining physician, Dr. Barnes, while assigning moderate weight to the opinion of two non-examining physicians, without providing any reasoning for her decision to deviate from the general rule in weighing such opinion evidence.  Based on the facts presented here, this was legal error.  *See*

14

*Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (violation of a regulation constitutes legal error).

### C.   PHYSICIAN ASSISTANT BOBBIE BAGGETT, KIRKPATRICK'S OTHER MEDICAL SOURCE

Kirkpatrick contends that, when determining his RFC, "the ALJ failed to properly evaluate the opinion of the treating physicians' assistant, [Bobbie] Baggett."  (Dkt. 12 at 12).  Specifically, Kirkpatrick argues:

> [T]he fact that the opinion was rendered by Ms. Baggett, a certified physicians' assistant, is not a basis for giving the opinion no weight. Rather, the ALJ was obligated to apply the factors set forth in 20 CFR § 404.1527 to evaluate the opinion of the treating "non-medical" source.  The ALJ failed to do so.
>
> With regard to consistency of the opinion, the opinion of Ms. Baggett is consistent with the opinion of the evaluating orthopedic surgeon, Dr. Barnes and the treating podiatrist, Dr. Reyhani.  Merely stating that an opinion is inconsistent does not make it so.  The ALJ failed to point out any inconsistency or refer to the medical evidence she relied upon to establish such inconsistency.  Accordingly, the Plaintiff submits that the ALJ failed to properly evaluate the opinion of the treating physicians' assistant, Ms. Baggett.

(*Id.* at 11–12).

**Requirements for Giving Weight to Other Sources:** Federal regulations create a broad framework for social security administrative law judges to follow in making their decisions.  The regulations classify evidence from medical sources into two categories: "acceptable medical sources" and "other sources."  20 C.F.R. § 416.913(a), (d) (2013).[8]

---

[8] 20 C.F.R. §§ 404.1527 and 416.913, the regulations most relevant here, were reformulated effective March 27, 2017.  However, in this opinion the Court refers to the 2013 regulations, which applied at the time of the ALJ's determination, rather than to their recently-updated 2017 versions.

"Acceptable medical sources" include licensed physicians and certain other listed medical practitioners, but not physicians' assistants.  § 416.913(a)(1)–(5).  "Other sources" are the remaining sources not listed above, including physician assistants.  § 416.913(d)(1).  Evidence from "other sources" can be used to support findings of severity of an impairment and effect on a claimant's ability to work.  § 416.913(d); *see also Porter v. Barnhart*, 200 F. App'x 317, 319 (5th Cir. 2006).

"In considering opinions from such 'other sources,' the ALJ may consider factors such as (1) the nature and extent of the relationship between the source and the individual; (2) the source's qualifications; (3) the source's area of speciality or expertise; (4) the degree to which the source presents relevant evidence to support his or her opinion; (5) whether the opinion is consistent with other evidence; and (6) any other factors that tend to support or refute the opinion."  *Precour v. Colvin*, No. 3:12-CV-2666-L, 2013 WL 4007771, at *5 (N.D. Tex. Aug. 6, 2013) (citing 20 C.F.R. §§ 404.1527(d) & 416.927(d)).  "[T]he hearing officer is not required to consider every weight determining factor[,] however, [s]he should examine those factors applicable to the particular circumstances of a given case."  *Ihde*, 270 F. Supp. 3d at 963 (citations omitted).  The ALJ's "decision should sufficiently discuss the weight factors to establish why [s]he rejected opinion evidence; [but her decision] cannot be 'devoid of any degree of specific consideration' of the opinion evidence."  *Id*. (quoting *Cruse v. Commissioner of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007)).  *See also* SSR 06-03P, 2006 WL 2329939, at *4) (Aug. 9, 2006) (explaining "[a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability

determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence … allows a claimant or subsequent reviewer to follow the adjudicator's reasoning").[9] And "[a]lthough an ALJ may assign little weight to an 'acceptable medical source' only upon a showing of good cause, [the Fifth Circuit has] not imposed a good cause requirement to discount medical opinions from 'other sources.'" *Young v. Berryhill*, 689 F. App'x 819, 822 (5th Cir. 2017).

**Weight Given Physician Assistant Bobbie Baggett:** The ALJ assigned no weight to the physical limitations assessed by Baggett in the Disability Impairment Questionnaire she completed on October 5, 2015.[10] Specifically, the ALJ rejected Baggett's opinion because "it was completed by a physician assistant and is inconsistent with other substantial evidence." (Dkt. 10-4 at 42). The ALJ further explained that "[t]he opinion of the physician assistant appears based primarily, if not solely on the claimant's subjective self-reports rather than on any objective medical findings." (*Id*. at 42–43).

---

[9] On March 27, 2017, the Social Security Administration rescinded Social Security Rulings 06–03p, 96–2p and 96–5p for all claims brought on or after that date. Rescission of Social Security Rulings 96–2p, 96–5p, and 06–3p, 82 Fed. Reg. 15263–01 (Mar. 27, 2017). Kirkpatrick, however, filed his initial benefit applications on January 14, 2014, received a decision from the hearing officer on February 2, 2016, and filed his complaint in federal court on December 2, 2016. Therefore, these rulings remain applicable for the purposes of this case. *See* Rescission of Social Security Rulings, 82 Fed. Reg. 15263–01.

[10] The ALJ specifically cites the Disability Impairment Questionnaire completed by Bagget as the "opinion" she gives no weight. (Dkt. 10-4 at 42). ("[t]he undersigned also notes that she has considered the opinion at Exhibit 13F, but gives this opinion no weight").

Here, Baggett falls into the category of "other source."  *See Buchanan v. Berryhill*, No. 3:15-CV-3287-BH, 2017 WL 998513, at *8 (N.D. Tex. Mar. 14, 2017) ("[e]vidence from 'other sources' includes opinions from … physicians' assistants").  Thus, the ALJ was required to evaluate Baggett's opinion through the lens of the *Newton* factors, which are set out above.  *See, e.g., Jorgensen v. Berryhill*, No. 4:15-CV-0889-O-BL, 2017 WL 785805, at *13 (N.D. Tex. Feb. 9, 2017), *report and recommendation adopted*, No. 4:15-CV-0889-O, 2017 WL 770617 (N.D. Tex. Feb. 28, 2017) (explaining "ALJs should … evaluate opinions from other medical sources through the lens of the regulatory factors set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c), while remaining cognizant that not every factor will apply to every case").  Although the ALJ did not provide a specific recitation of the factors, the ALJ's decision demonstrates that she did, in fact, consider several of the relevant factors in the context of her decision.  Based on the specific facts in this case, the ALJ's consideration of the relevant factors is sufficient.

Specifically, the ALJ seems to have considered factors 2, 4, and 5.  The ALJ identifies Baggett by her title, thereby recognizing her qualifications.  The ALJ also states that Baggett's opinion is "based primarily, if not solely on the claimant's subjective self-reports rather than on any objective medical findings."  (Dkt. 10-4 at 42–43).  Indeed, in an earlier portion of her opinion, the ALJ fully discusses Baggett's questionnaire, noting among other things that Baggett "completed a disability impairment questionnaire where she opined that Mr. Kirkpatrick could occasionally lift up to 10 pounds, based on his subject complaints."  (*Id*. at 41).  These statements about the basis underlying Baggett's opinion arguably apply to factor 4.  Lastly, the ALJ explicitly states that Baggett's

18

opinion "is inconsistent with other substantial evidence," which speaks to factor 5.  (*Id*. at 42).   The Court recognizes that Kirkpatrick takes exception with the ALJ's cursory statement regarding any inconsistency between Baggett's questionnaire and other record evidence.  *See* (Dkt. 12 at 11–12) ("The ALJ failed to point out any inconsistency or refer to the medical evidence she relied upon to establish such inconsistency.").  As mentioned above, this argument has some basis in law.  *See e.g., Jackson v. Colvin*, 240 F. Supp. 3d 593, 604 (E.D. Tex. 2017) (remanding in part because "the ALJ did not identify the particular medical evidence of record he believed was inconsistent … in the paragraph labeling his opinions of 'little weight' or elsewhere in his decision").  However, any error evinced by the ALJ's failure to provide specifics regarding inconsistency is undercut by the ALJ's determination that Baggett's questionnaire is supported by subjective self-reports and not objective medical evidence.[11]

Importantly, Kirkpatrick does not contend that Baggett based her determinations as to his physical limitations on any particular objective medical evidence, nor does he contest or otherwise discuss that particular aspect of the ALJ's decision.[12]   In an

---

[11] Even if the ALJ's failure to fully discuss the purported inconsistency was a procedural error, it merely amounts to harmless error, which does not warrant remand.  *See, e.g., Williams v. Colvin*, No. CV H-15-82, 2016 WL 1182220, at *8 (S.D. Tex. Mar. 28, 2016) ("Harmless error exists when there is no possibility that the ALJ would have reached a different conclusion absent the error.") (internal quotation marks, citations, and alterations omitted).  *See also Smith v. Colvin*, No. 12-CV-03290, 2014 WL 11538275, at *7 (S.D. Tex. Oct. 27, 2014) (explaining when an "ALJ's failure … is a harmless error," such "does not require remand") (Hanks, J.).

[12] Baggett actually added a notation to her questionnaire near the section addressing Kirkpatrick's ability to carry and lift.  (Dkt. 10-14 at 72).  Along the right hand margin of the page, she wrote "Subjective."  (*Id*.).

abundance of caution, the Court has nonetheless reviewed the records submitted by
Baggett along with the questionnaire.

In her questionnaire, Baggett indicates that "MRI 12/2013" supports her diagnosis.
(Dkt. 10-14 at 70).  The MRI report is located in at least two places in the record: Dkt.
10-13 at 49–50 and Dkt. 10-14 at 67–68.  The ALJ discussed this report, noting that the
"MRI of the lumbar spine dated December 17, 2013, revealed degenerative disc disease
with stenosis and bulging disc at L2-L3 and L3-L4, but no disc herniation."  (Dkt. 10-4 at
39).  The MRI report does not discuss or describe any of the physical limitations
described by Baggett in her questionnaire.

The only other medical documentation Baggett references in the questionnaire was
in response to question 5a, which asked for her to "[l]ist medication(s) prescribed,
dosage, and any side effects your patient has reported.  (*Id*. at 71).  She responded, "see
attached."  (*Id*.).  The document Baggett attached is located at (Dkt. 10-14 at 65–66).
The document only identifies Kirkpatrick's prescribed medications, and does not discuss
or describe any of the physical limitations described by Baggett in her questionnaire.

Additionally, there is no indication that Baggett conducted a medical examination
immediately before completing the questionnaire on October 5, 2015.  There are, of
course, other medical records contained in the record that was before the ALJ, including
progress notes authored by Baggett.  However, Baggett did not reference or specifically
discuss any of her previous progress notes within the questionnaire.  Given this fact,
Baggett's opinion regarding Kirkpatrick's physical limitations does appear to be based
"primarily, if not solely on [Kirkpatrick's] self-reports."   (Dkt. 10-4 at 42–43).

Consequently, Baggett's failure to provide objective medical evidence supporting the opinion she expressed in the questionnaire, alone, is sufficient reason to give no weight to her opinion regarding Kirkpatrick's physical limitations.  *See, e.g., Greenspan*, 38 F.3d at 237 (explaining even a treating physician's medical opinion may be given "no weight" if it is "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence"); *Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017) ("We have previously characterized responses to a questionnaire format as typical brief or conclusory testimony … when they lack explanatory notes or supporting objective tests and examinations.") (internal quotation marks, alterations, and citation omitted).  Thus, the Court finds that the ALJ applied proper legal standards in assigning Baggett's opinion no weight.[13]

## D.   THE ALJ'S ERRORS WERE NOT HARMLESS

Although the ALJ erred by improperly evaluating Dr. Reyhani's and Dr. Barnes's opinions, the Court must still consider whether the errors were harmless.  "In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error."  *McNeal v. Colvin*, No. 3:11-CV-02612-BH-L, 2013 WL 1285472, at *27 (N.D. Tex. Mar. 28, 2013) (citations omitted).

Kirkpatrick contends that "had the ALJ properly considered medical opinion evidence [of Dr. Reyhani and Dr. Barnes (which amounted to a sedentary RFC)] and found [him] limited to no more than sedentary work, she would have found that he was

---

[13] This result is especially appropriate here, where the medical opinion is based on self-reports and the ALJ has already found that the claimant's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not fully credible."  (Dkt. 10-4 at 38).

unable to perform his past work" and the "vocational rules … would have directed a conclusion that he is disabled."  (Dkt. 12 at 14).  In her response brief, the Commissioner does not address the issue of harmless error.

As described above, Dr. Reyhani found that Kirkpatrick is limited to occasionally lifting and carrying ten pounds, and Dr. Barnes found that he was limited standing and walking no more than two hours in an eight hour work day.  The Vocational Expert testified that either of these limitations would have resulted in a sedentary RFC.  *See* (Dkt. 10-4 at 77–78); *see also* 20 C.F.R. § 404.1567 ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").  The Vocational Expert also testified that the walking and standing limitations would significantly erode the light occupational base and revert consideration to sedentary work, and such an adjustment from Kirkpatrick's past relevant work (which was skilled light work), to sedentary work would be more than a minimal adjustment.  *See* (Dkt. 10-4 at 77–79).

The Court finds that the errors described above are "material to the ALJ's ultimate finding of 'not disabled'—not only because [s]he decided the matter at step four of the sequential evaluation process, but also because if [Kirkpatrick] is unable to perform past relevant work, then, upon consideration of h[is] vocational factors and an RFC for no more than sedentary work, a finding of 'disabled' may be compelled under the guidelines

at step five." *Brown v. Colvin*, No. CV 15-2741, 2017 WL 384278, at *4 (W.D. La. Jan. 11, 2017), *report and recommendation adopted*, No. CV 15-2741, 2017 WL 384691 (W.D. La. Jan. 26, 2017) (citing Rule 201.06, Table 1, Appendix 2, Subpart P, Regulations No. 4.). In other words, if the ALJ had properly considered Dr. Reyhani's and Dr. Barnes's opinions, she might have imposed greater restrictions on Kirkpatrick's RFC. And had the ALJ tracked this more restricted RFC to the Vocational Expert, a different conclusion might have been reached regarding Kirkpatrick's disability status. Because it is not inconceivable that the ALJ would have reached a different disability determination had she properly considered Dr. Reyhani's and Dr. Barnes's opinions, her error was not harmless and requires remand.

Accordingly, this case must be remanded to the Commissioner for reconsideration of Dr. Reyhani's and Dr. Barnes's opinions in accordance with this opinion and applicable law.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 12) should be GRANTED, the decision of the Commissioner should be REVERSED, and the case should be REMANDED for reconsideration in accordance with this opinion and applicable law.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13.

Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 18th day of April, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE